## MINKERT v. MINKERT.   (No. 2944.)

(Court of Civil Appeals of Texas. Texarkana. May 22, 1924.)

**1. Bills and notes ⬳140—Agreement to extend maturity held to substitute new date for payment of principal only.**

Where parties to note payable with interest from maturity, before that time, for mutual benefit, agreed to extension of time for payment of unpaid portion of debt, their intention was, not to change agreement respecting interest, but to have note bear interest from first maturity and to substitute new date only for payment of principal.

**2. Interest ⬳45—Extended note bears interest from original date.**

An extended note, unless otherwise specially provided, bears interest from original date.

**3. Judgment ⬳878(1)—Joint judgment debtor suing codebtor who assumed debt must show nonpayment by defendant and payment by plaintiff.**

A joint judgment debtor cannot recover from his codebtor on ground that latter had assumed the debt, without showing payment by plaintiff and nonpayment by defendant after judgment.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by J. G. Minkert against O. E. Minkert. Judgment for defendant, and plaintiff appeals. Reversed and remanded for new trial.

The suit is by appellant against the appellee upon a vendor's lien note to recover the amount of the note and to foreclose the lien on the land. The appellee pleaded, in abatement, that the note by its terms was not due and will not become due until 1927, and general denial, and specially averred, as a defense, that in September, 1921, after the execution of the note in February, 1921, and before the maturity of the note, the appellant and appellee agreed in writing to change the tenor of the note from the original due date fixed for its maturity of "January 1, 1922," to and until "February 7, 1927," and

that in virtue of the agreement there is, by the terms of the note, no part of the principal and no installment of interest due or to become due until February, 1927.

The court, in keeping with special findings of fact made, sustained the plea in abatement, decreeing:

"That the plaintiff take nothing by this action against the defendant, and that the vendor's lien sought to be foreclosed be not foreclosed, and that the defendant, O. E. Minkert, go hence without day and recover his costs against the plaintiff, J. G. Minkert, for which let execution issue."

Continuing, the judgment provides:

"It is further ordered, adjudged, and decreed by the court that this judgment shall not be a bar to a right of action in favor of the plaintiff, J. G. Minkert, on his demand on and after January 1 (February 7), 1927, when same matures."

On February 7, 1921, the appellant executed and delivered to appellee the following deed:

"For and in consideration of the sum of $4,-760, to me paid and secured to be paid by O. E. Minkert, as follows, $1 to me cash in hand paid, the receipt of which is hereby acknowledged, and the promise and agreement on the part of the said O. E. Minkert to pay off and satisfy the following indebtedness, to wit, the sum of $1,000, being one-half of a certain loan for the sum of $2,000 held by the United States Savings Bank of Detroit, Mich., against the land hereinafter conveyed, and two notes for the sum of $500 and $750, respectively, executed by J. G. Minkert to A. B. Gardner, Jr., and interest on same, and the sum of $500 to be paid by O. E. Minkert to Dr. A. B. Gardner in accordance with an agreement on the part of the said Dr. A. B. Gardner to accept $2,000 for his life interest in the hereinafter described land (the said $500 being that portion of the $2,000 for which said O. E. Minkert would be liable), and the sum of $2,280, secured to be paid as evidenced by one certain promissory vendor's lien note of even date hereof for the sum of $2,280, due and payable to the order of J. G. Minkert on January 1, 1922, with interest from maturity until paid at the rate of 8 per cent. per annum."

Said deed expressly retains a vendor's lien "to secure payment of the above-described notes," and has been duly registered in the county clerk's office. The note mentioned in the deed for $2,280, and being the one sued on, reads:

"$2,280.00.   No. ———.
    "Greenville, Texas, February 7, 1921.
   "On January 1, 1922, after date, I promise to pay to J. G. Minkert or order the sum of two thousand two hundred and eighty ($2,280) dollars, with interest thereon from maturity at the rate of 8 per centum per annum, the interest payable annually at Greenville Tex., for value received. This note is given in part pay-

ment for a certain lot or parcel of land situated in Hunt county, Tex., situated about 5½ miles east from Greenville, a part of the John D. McCammant and Levi Lloyd surveys, this day conveyed to O. E. Minkert by J. G. Minkert, which instrument of conveyance is hereby referred to for further description, and to secure the payment hereof according to the tenor hereof a vendor's lien is retained in this note and in said conveyance. This note and all past-due interest thereon shall bear interest from the maturity thereof until paid at the rate of 8 per centum per annum. It is understood and agreed that failure to pay this note, or any installment of interest thereon, when due, shall, at the election of the holder of them, or any of them, mature all notes this day given by O. E. Minkert to said J. G. Minkert in payment for said property.

"And I hereby specially agree that if default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or if collected by legal proceedings, to pay 10 per cent. additional on the principal and interest due thereon as collection fees. "[Signed]   O. E. Minkert."

The following written agreement was entered into by the parties on September 19, 1921:

"The State of Texas, County of Brazos.

"This contract made and entered into by and between J. G. Minkert, of the county of Brazos, state of Texas, party of the first part, and O. E. Minkert, of Hunt county, state of Texas, party of the second part, witnesseth:

"That whereas, the party of the first part is the legal holder and owner of a certain vendor's lien given by O. E. Minkert as set out in a certain deed, dated the 7th day of February, 1921, and recorded in Deed Book 265, p. 196, of Hunt County, in favor of J. G. Minkert, upon land conveyed in said instrument of writing, to wit, 60 acres of land in the John McCammant survey and 96.68 acres of land in the Levi Lloyd survey in Hunt county, Tex., the land conveyed by said deed being an undivided one-half interest in said land, which said land and note are fully described in said deed; and whereas, there is still due and remaining unpaid of said indebtedness the sum of $2,280, as evidenced by one certain note; and whereas, J. G. Minkert is now the legal owner and holder of said note, and for mutual benefit: The parties hereto, being the parties at interest, have agreed to an extension of the time for the payment of the unpaid portion of said indebtedness, which indebtedness is acknowledged and confessed to be just by the party of the second part, to mature as follows, to wit, on February 7, 1927; and the said party of the second part hereby agrees to pay the said indebtedness to the said party of the first part, or other holder thereof, at the expiration of said extended time. It is further agreed that all rights, privileges, and benefits conferred upon, or acquired by, the party of the first part, by or through the original beneficiary or grantee, are expressly reserved and confessed, subject alone to the extension herein granted.

"In witness whereof the said parties hereto set their hands on this 19th day of September, 1921.  [Signed]  J. G. Minkert, Party of the First Part.  O. E. Minkert, Party of the Second Part.   Witness to each signature: ———. ———."

This agreement was duly acknowledged and then recorded on the 22d day of September, 1921, in the deed records of Hunt county.

The appellee has never paid any interest on the note, and is claiming that none is due and owing, according to its terms, in virtue of the written agreement changing and substituting the due date to February 7, 1927. The note for $750 described in the deed above was transferred by A. B. Gardner to L. L. Kennebrew, and he afterwards instituted a suit in the district court of Hunt county against both appellant and the appellee to recover upon the note and to foreclose the vendor's lien on the land, and a judgment was rendered in his favor for the amount of the note and foreclosing the vendor's lien against both appellee and appellant. Appellant, however, has not shown in this record that the judgment was not paid off by the appellee, nor that he himself has paid it.

The trial court made the following conclusion:

"The court finds that by the contract of extension the date of the payment of the $2,280 note was postponed until 1927, and a failure to pay interest upon said note before the new date of maturity, nor the failure of O. E. Minkert to pay the $750 note, did not confer upon the plaintiff the right to declare the $2,280 note due and to sue for the debt and to foreclose the vendor's lien on the land."

Stinson & Peak, of Greenville, J. H. Ranson, of Dallas, and F. L. Henderson and J. G. Minkert, both of Bryan, for appellant.

Neyland & Neyland, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1] The note sued on provided, as material to state, as follows:

"February 7, 1921.   On January 1, 1922, after date, I promise to pay to J. G. Minkert or order the sum of two thousand two hundred and eighty dollars, with interest thereon from maturity at the rate of 80 per centum per annum, the interest payable annually at Greenville for value received. * * * It is agreed and understood that failure to pay this note, or any installment of interest thereon, when due, shall, at the election of the holder of them, mature all notes this day given by O. E. Minkert to said J. G. Minkert in payment of said property."

On September 19, 1921, these parties, "for mutual benefit," as stated, agreed to "an extension of the time for the payment of the unpaid portion of said indebtedness, to mature as follows, to wit, on February 7, 1927." The court concluded that the failure of the appellee to pay interest at the time this suit was brought did not confer upon the appellant the right to declare the note sued on due, for the legal effect of the agreement of

September 19, 1921, changing and postponing the maturity of the indebtedness to February 7, 1927, was to entitle the appellant to interest only after the latter date, because this date became the time of maturity to which the note would refer and apply. The point for decision here is that of whether or not the appellee was due to pay interest from and after January 1, 1922, or February 7, 1927.

[2] The purpose and intention of the agreement of September, 1921, was clearly to change or modify the time of payment of "the unpaid portion of said indebtedness," which is described as "the sum of $2,280." No other term or parts of the original note are mentioned. The change and substitution of date for the payment of the indebtedness mentioned was made, as recited, "for the mutual benefit." There is nothing in the nature of the agreement suggesting any other reason or necessity for the change. And it can hardly be pretended that it was not competent, after the original note was made and signed, for the parties to make, "for mutual benefit," another agreement in regard to some parts of the note, which to that extent should be a substitute for the first one. In this light the two instruments, the original note and the later agreement, must be considered and construed together, giving proper legal effect to all the terms therein. Undoubtedly, the principal sum of the note would not be due and payable until February 7, 1927, for this is the substituted date expressly agreed upon in the later agreement. But, according to the terms of the note, which was not changed by the agreement, "failure to pay any installment of interest thereon when due" would mature the principal sum and make it due and payable. The agreement does not refer to interest, while the terms of the note do provide in respect thereto. According to the terms of the note, the maker was to pay "interest thereon from maturity at the rate of 8 per centum per annum, the interest payable annually." The words "interest thereon from maturity," appearing in the note, express an agreement respecting the payment of interest, and that it shall begin "from maturity," meaning and referring to January 1, 1922, and be "payable annually" until the principal sum be fully paid. Consequently, by the terms of the note the maker would be obligated to pay interest on the principal sum from and after the contracted date of January 1, 1922. The supplemental agreement of September did not offset or modify this term of agreement respecting interest, unless it was intended by the parties that the substituted date of maturity should relate back and speak as of the date of the note. Then, clearly, if such were the intention of the parties, no interest was due or payable until the new date of "maturity." But it cannot properly be said, from the

agreement or the circumstances, that the parties intended the new date to relate back or to speak from any other date than September, 1921, when it was made. Speaking from the date of September 19, 1921, the agreement, as it does, would evidence the intention, "for mutual benefit," to grant longer time to the maker in which to pay the principal sum, and the maker to pay interest from the date of January 1, 1922, and "annually" to the new date of maturity. The intention and purpose of the parties was not to change or modify the agreement respecting interest, but to have the note bear interest from its first maturity in January, 1922, and to substitute a new date only for the payment of the principal. An extended note, unless otherwise specially provided, bears interest, from the original date fixed in the note. Dashiell v. Moody & Co., 44 Tex. Civ. App. 87, 97 S. W. 843.

[3] In order for the appellant to recover on the $750, it devolved upon him to show that the appellee has not paid it after judgment was rendered and that he himself had paid the judgment. In the absence of such proof a judgment cannot be rendered.

The judgment is reversed, and the cause remanded for another trial.