**Harold C. DONAHUE et ux., Appellants,**

v.

**RATTIKIN TITLE COMPANY, Appellee.**

**No. 17690.**

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 6, 1976.

Rehearing Denied March 12, 1976.

Zimring & Warner, and Frederic E. Zimring, Dallas, for appellants.

Law, Snakard, Brown & Gambill, and James W. Schell, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Harold C. Donahue ex ux. brought suit predicated upon breach of agency escrow contract against Rattikin Title Company. Premise for complaint was Rattikin's payment from funds of plaintiff escrowed for a particular purpose without authorization and in disregard of restrictions plaintiff believes to be implied from the escrow contract.

Trial was by the court, without jury, following which a take nothing judgment was rendered for Rattikin. Plaintiff appealed.

We reverse the judgment.

Early in the year 1973 plaintiff owned a lot on which he desired to build his home. Not disputed is that the premises comprised his homestead. March 2, 1973, he contracted with one Keith, a general contractor, to build the home. There is dispute which becomes immaterial when we treat the contract as for $60,000, immediately paid in full by note, secured by mechanic's lien on the premises. Noted is that there was not a "retainage" of 10% of the contract price as required by V.A.T.S. 5469, "Lien claimants fund with preference to mechanics". The full amount, by note, is to be considered paid in advance as of the date of the contract with Keith.

Immediately, on March 2, 1973, Keith transferred and assigned the plaintiff's $60,000.00 note to Fort Worth National Bank. Keith made arrangements with the bank for his interim financing as he proceeded to perform the construction contract.

As the house was in the course of being constructed plaintiff made arrangements

with Fort Worth Savings and Loan Association for permanent financing. There was a "deadline" for "closing" the transaction for permanent financing. This "deadline" was to be only a few days after August 23, 1973, when Keith had completed plaintiff's home and plaintiff was ready to move into it. At the "closing" a hiatus was found existent. Keith was insistent that plaintiff owed an amount over the $60,000.00 and that the lien should not be released until the excess was paid. Keith presented unpaid bills from sub-contractors, etc. owed for labor performed and material furnished in the building of plaintiff's home. Plaintiff took the position that Keith was fully paid, indeed overpaid on the contention that the house was actually built on a cost-plus contractual consideration; further that since Keith had contracted with the sub-contractors, etc., not the plaintiff, that Keith should pay the bills. There is concession that these sub-contractors' bills were for services and materials actually necessarily supplied, that they were reasonable, and that they should have been paid. Plaintiff merely says that the obligations paid were not his obligations.

Fort Worth Savings and Loan did not desire to proceed with its contract for permanent financing unless there was resolution of the difficulty. Plaintiff, enlisting aid of attorney, proposed a contract between himself and Rattikin Title Company whereby his $16,000.00 in cash would be placed in escrow with Rattikin as agent for the purpose of affording security whereby Fort Worth Savings and Loan would proceed to enter into contract with plaintiff for permanent financing and in order to obtain an insured title. The purpose was accomplished, with written contract entered into between plaintiff and Rattikin. Fort Worth Savings and Loan was willing to proceed. Rattikin was willing to issue a policy of title insurance. Plaintiff obtained his permanent financing, with "closing" handled by Rattikin as agent for the purpose, and Rattikin provided title insurance. Plaintiff moved into his home.

Thereafter Rattikin used funds from the "escrowed account" to pay itself its normal fees and charges for services in "closing" and for the title insurance, paid interest owed by plaintiff to the Fort Worth National Bank, and also paid sub-contractors who were owed money by the general contractor Keith.

Not involved in the instant case is a pending lawsuit between plaintiff and Keith.

It is certain language of the escrow contract between plaintiff and Rattikin in which the dispute of the parties is founded. After making provision whereby plaintiff's escrowed money might be disbursed upon agreement of settlement between plaintiff and Keith, but failing which would be deposited into the registry of the court where litigation was pending, the following sentence was appended: "Provided, however, the Second Party (Rattikin) may pay all or any part of the aforementioned sum to such parties as it deems necessary who have perfected valid mechanic's or materialman's liens on the subject property in order to avoid foreclosure thereof."

Rattikin did pay from the plaintiff's escrowed funds amounts which satisfied the claims of various of the unpaid sub-contractors. Plaintiff's claim is that these had not "perfected valid . . . liens", that Rattikin therefore violated the contract because the claimants paid had not perfected valid liens and that Rattikin is liable to him for the part of his escrow funds that it paid to such claimants.

We find, without difficulty, that the amount at issue is readily reducible to the amount of the claims of the sub-contractors of Keith who without written contracts with either the plaintiff or Keith performed labor and provided materials which went into the completed construction of plaintiff's home. It was these who were paid by Rattikin in the belief that to do so was authorized by plaintiff's contract with them, but which payments are challenged, viz:

| Freed Appliance Distributors, Inc. | $ 466.96 |
|---|---|
| Webb Builders Hardware | 143.03 |
| Ferris Electric Company | 1,024.90 |
| Irving Electric Company | 1,470.00 |
| Wesley Wacasey | 270.00 |
| O. F. Thomas | 589.00 |
| Totaling the amount of | $3,963.89 |

By findings of the trial court, as the fact finder, supported by evidence in the case, we are able to reduce the amount in dispute by deducting from plaintiff's claim the following:—(a) The amount paid to sub-contractors Chester Jackson and Cody & Cody Co., Inc., by Rattikin out of the escrowed funds. Plaintiff told them and consented that they have their bills paid from such funds by merely filing mechanic's liens with the County Clerk. (On these there was consequent waiver on the part of the plaintiff that there be formal written notice and demand of him which sufficed to remove the amount so paid as any part of the issues in dispute.)—(b) That payment to the Fort Worth National Bank which was the amount owed it by plaintiff as interest on his note to Keith which was assigned to the bank. This was an obligation of the plaintiff which was extinguished by Rattikin's payment.—(c) The indebtedness owned by plaintiff to Rattikin as "closing costs", and for title insurance. This was rightfully the entitlement of Rattikin. Its payment by use of plaintiff's escrowed funds did not result in injury or damage to him.

■ Had there been served upon the plaintiff the written notices relative to the $3,963.89 by Freed Appliance Distributors, et al., as required by V.A.T.S., Art. 5453, "Securing lien", we could say the same as applied to plaintiff's demand as in part of the foregoing paragraph, i. e. that plaintiff was not injured because he might not be deemed to have suffered injury by payments to these sub-contractors. This would be true because by a "sort of legal fiction" he would be treated exactly as though he had sufficient "retainage" funds of the general contractor, Keith, by which he could retire Keith's indebtedness to the sub-contractors. In other words, he could extinguish the general contractor's obligations to the sub-contractors and become subrogated to the sub-contractors' rights by payment out of such amount so retained, with each instance of payment reducing the amount he owed Keith for completion of his contract by the amount so paid. Plaintiff disregarded his duty by law to make the 10% "retainage" and it would be for that reason his personal liability would exist. V.A.T.S. 5469, supra. That this would be the correct legal situation is adequately explained by the case of *W & W Floor Covering Co. v. Project Acceptance Co.*, 412 S.W.2d 379 (Austin, Tex.Civ.App., 1967, no writ hist.).

■ Further, by the decision of that case, since plaintiff had paid Keith the full amount of the price for the general contract, so that there was not the 10% retainage therefrom as was the requirement of law, then he would be liable to pay the sub-contractors, etc., exactly as though he had made the 10% retainage. In either event his obligation would be for the amount owing if there had been full compliance with Art. 5453 and its requirements as to "notices" and "filing" by the sub-contractors. Since plaintiff's property was his "homestead" and since he had never made a written contract with any of the sub-contractors there could not be a valid lien which could attach on the property so that it would provide security for such amount owing even if a lien secondary to that granted to Keith might have been given. The only exposure of the plaintiff was to liability for *in personam* damages.

In the instant case there was no evidence either that Freed Appliance Distributors, et al., had or had not served upon the plaintiff the written notice required by Art. 5453. Nor was there any finding of fact which in any way bears upon that question.

To clarify: Freed Appliance Distributors, et al., neither had nor could they have had a "lien" nor a "valid lien" as applied to plaintiff's "homestead". Their contracts were with Keith, the general contractor who had received the lien. *W & W Floor Covering*

*Co. v. Project Acceptance Co.,* supra. Nevertheless, these sub-contractors had the right, by doing those things which would have created a "valid lien" had plaintiff's property not been his homestead, to have personal judgments rendered against plaintiff for the several amounts of the debts owing to them by Keith. The damages recoverable would be treated as payable out of the 10% "retainage" which plaintiff should have kept for 30 days before delivering it up to Keith. Art. 5469. Since he did not make the "retainage" their right to judgment against the plaintiff in the same manner, to the same extent, and for the same reasons, would exist because of plaintiff's disobedience of Art. 5469.

Even so, plaintiff's suit is against Rattikin, its agent, and seeks in an action of principal vs. agent to establish that there was breach of contract by agent for which he should decreed liable, plus the damage resultant therefrom to the principal. On this see Restatement of the Law, Second, "Agency", Ch. 13, "Duties and Liabilities of Agent to Principal", Sec. 383, "Duty to Act Only as Authorized", Sec. 400, "Liability for Breach of Contract", and Sec. 402, "Liability for Misuse of Principal's Property". Under Sec. 383, Comment (b), discusses the situation where the agent misinterprets unambiguous instructions.

■ Of course, it is necessary in a case where the principal brings an action against his agent for damages (flowing from action of the agent in a mistaken interpretation of his duty under an unambiguous contract) to discharge the burden of pleading and proof that there has been a breach of contract in consequence of which damage has been sustained, and the amount thereof. The question as applied to the suit of plaintiff against his agent Rattikin is whether plaintiff has discharged his burden of proof. 23 Tex.Jur.2d, p. 156, "Evidence", Sec. 112, "(Party on whom burden rests)—Plaintiff". We find that plaintiff discharged the burden.

Fort Worth Savings and Loan refused to go forward unless the contract was made. Rattikin was concerned and it is obvious that it would not issue a policy of title insurance. Plaintiff insisted that he was not liable for the bills of the sub-contractors, etc., and to allay the fears of Rattikin and Fort Worth Savings and Loan, submitted the escrow agreement drawn by his attorney. The agreement was accepted and signed by Rattikin and all parties felt secure. Thereby was title insurance and permanent financing secured. The contract meant different things to the parties, but it was not ambiguous. In these circumstances Rattikin was bound by its assent and entry into the contract despite the fact that it erred in its interpretation. See Williston on Contracts, Third Edition, p. 365, "Interpretation and Construction of Contracts", Sec. 606, "Formal and Written Contracts May Exist Though Parties Attach Different Meanings to the Language." Hence the contract, being unambiguous, was binding upon the parties.

■ There was breach of contract by Rattikin whereby it is shown that plaintiff sustained damages. From what we have said plaintiff showed damages to the extent of $3,963.89 of the amount Rattikin had paid. Only by the principle of law relative to "confession and avoidance" could Rattikin escape the liability. Clearly the only means of discharging that burden would be for Rattikin to prove and obtain finding that it was an indebtedness to the sub-contractors enforceable against the plaintiff which was discharged as the obligation of the plaintiff by its disbursements from the escrowed funds.

If Rattikin had shown that the payee sub-contractors had served notices by Art. 5453 upon the plaintiff then the existence of plaintiff's liability would have been demonstrated. *W & W Floor Covering Co. v. Project Acceptance Co.,* supra. Rattikin would have thereby shown that it was entitled to prevail because its disbursements had paid obligations of the plaintiff.

It is because of the failure of Rattikin's evidence to make the proof that there had been the notices by Art. 5453 required to be served upon the plaintiff that we believe the judgment should be reversed. Though there might have been shown the justification for Rattikin's disbursements such was not shown because it failed to discharge the burden of proof to show an absence of injury to plaintiff by proving plaintiff's liability to the sub-contractors. Rattikin's failure of proof of the defense was because it did not show that notices, required as a condition precedent to plaintiff's liability to the sub-contractors, had actually been served upon the plaintiff.

The judgment of the trial court is reversed. Judgment is here rendered for plaintiff Harold C. Donahue and his wife Jacqueline L. Donahue against Rattikin Title Company for the amount of $3,963.89, with interest thereon at the rate of 6% from the April 17, 1975 date of the judgment of the trial court until September 1, 1975, and thereafter at the rate of 9%. V.A.T.S. Art. 5069–1.05, "(Interest)—Rate of judgments".