SAMMONS ENTERPRISES, INC., Appellant,

v.

Darrell F. MANLEY et al., Appellees.

No. 19310.

Court of Civil Appeals of Texas, Dallas.

May 27, 1977.

Rehearing Denied July 6, 1977.

Mike Joplin, Strasburger & Price, Dallas, for appellant.

Robert L. Blumenthal, Carrington, Coleman, Sloman, Johnson & Blumenthal, Joe B. Tolle, Asst. Dist. Atty., Dallas, for appellees.

GUITTARD, Chief Justice.

The question on this appeal is whether a statutory change in the rate of interest on judgments applies to a judgment recovered before the effective date of the change so as to make the judgment bear interest at the new rate from the date of the change. We hold that the judgment continues to bear interest at the old rate.

When the present judgment was signed on April 28, 1975, the statute governing the interest rate on judgments was Texas Laws 1967, chapter 274, section 2, at 610, which provided: "All judgments of the courts of this State shall bear interest at the rate of six percent per annum from and after the date of the judgment . . ." This statute was amended by the legislature in 1975 by substituting "nine" for "six." The amendment by its terms became effective September 1, 1975. Tex. Laws 1975, ch. 288, § 1, at 730.[1]

After an unsuccessful appeal from the judgment by defendant, Sammons Enterprises, Inc., plaintiffs Darrell F. Manley and Conway Phillips obtained from the district clerk a writ of execution for the amount of the judgment "with interest thereon at the rate of 6 percent per annum from April 28, 1975, to September 1, 1975, and thereafter at 9% per annum until paid in full." Sammons Enterprises then sought in the trial court a temporary injunction restraining Manley and Phillips and the sheriff of Dallas County from levying this writ or any writ providing for interest for any period in excess of six percent per annum. After a hearing, the trial court denied injunctive relief, and Sammons Enterprises perfected this interlocutory appeal, which was heard upon the complete record and with full briefs on both sides only seven days after the trial court's order denying the temporary injunction. Before the appeal was perfected, we issued our own temporary injunction to preserve the status quo pending decision of this appeal.

Appellant contends that the statutory change in the rate of interest does not apply to judgments recovered before its effective date, citing *Missouri P. Ry. v. Patton,* 35 S.W. 477 (Tex. Civ. App. 1896, writ ref'd). *Patton* is exactly on the point, except that it concerned the 1892 amendment to the same statute, which reduced the rate rather than increasing it. After the plaintiff had obtained satisfaction of the principal amount of the judgment with interest at the higher rate until the effective date of the rate change and thereafter at the new lower rate, he moved for execution for the balance, and the trial court granted judgment for the difference, which the defendant appealed. This judgment was affirmed by the court of civil appeals on the ground that the rate of interest was fixed by the original judgment. The court wrote:

> The rights and liabilities of the parties were then fixed by that judgment under the law as then existing, and when the judgment was so rendered it became a certain and fixed demand, that would not fluctuate in keeping with changes that might thereafter be made in the law that related to claims of that class, unless it clearly appeared that such laws were intended to have such retroactive effect. When demands are finally merged into judgments, subsequent changes by law of the rates of interest will not affect such judgments, unless the statutes so declare.

*Id.* 35 S.W. at 478.

This reasoning would have been equally applicable if the rate had been increased rather than reduced. The policy of the

---

1. Tex. Rev. Civ. Stat. Ann. art. 5069—1.05 (Vernon Supp. 1976).

state was declared to be that the rate of interest after judgment, like other matters involved in the suit, should be finally settled by the judgment and should not be subject to change with subsequent changes in the law.

Although at the time *Patton* was decided "Refusal" of a writ of error did not necessarily indicate approval of the opinion by the supreme court, only one point was raised by the appeal, and, consequently, we may presume that the supreme court approved the judgment for interest at the old rate and thus, on whatever rationale, construed the statute as the court of civil appeals construed it. *Conley v. Abrams*, 7 S.W.2d 674, 677 (Tex. Civ. App., Galveston 1928, writ ref'd); and *see Benavides v. Garcia*, 290 S.W. 739, 740 (Tex. Com. App. 1927, jdgmt adopted). *See* also *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 674 (1959). Even the notation "Refused, No Reversible Error" under present rule 483 of the Texas Rules of Civil Procedure may indicate approval of the judgment, as distinguished from the opinion, when the particular holding attacked on application for writ of error is necessary to the judgment of the court of civil appeals. Simpson and Wall, *Problems of Precedent Affecting Court of Civil Appeals Opinions*, 4 Sw.L.J. 398, 403 (1950). Under the practice when *Patton* was decided, "Refused" was at least this strong.

▪ We conclude, moreover, that the amendment of the same statute in 1975 was a legislative adoption of the construction given that statute in *Patton*. At the time of the 1975 amendment, the statute was in all respects now material exactly the same as the statute before the court in *Patton*. *See* Tex. Laws 1892, ch. 6, at 5; 10 H. Gammel, Laws of Texas, 369 (1898). The rule is well settled that when a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction. *Love v. Wilcox*, 119 Tex. 256, 28 S.W.2d 515, 524 (1930); *In re Estates of Carrigan*, 517

S.W.2d 817, 819 (Tex. Civ. App., Tyler 1974, no writ); and *see Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968).

Appellees do not contend that the amendment should be construed literally with respect to pre-existing judgments so that the new rate should apply retroactively "from and after the date of the judgment," as the statute provides. They contend, rather, that the amendment should be construed as if it provided that the new rate should apply from the effective date of the amendment only. No language in the statute indicates a legislative intent that the amendment should be so applied. If the legislature in 1975 had intended to make the change in rate applicable to pre-existing judgments after the effective date of the amendment, it could easily have so provided. Its failure to do so is evidence that it did not so intend, particularly in the light of the construction of the 1892 amendment in *Patton*.

▪ Appellees Manley and Phillips contend that *Patton* was incorrectly decided because the rate of interest on a judgment is not a matter of contract, but rather a matter of damages for wrongful withholding of money adjudged to be due, and that the rate of damages is controlled by the statute rather than by the judgment. Although this argument might be plausible in the absence of authority, we conclude that the *Patton* construction of the statute, which has presumably been approved by the supreme court and adopted by the 1975 amendment, has established the Texas rule to be that the rights of the parties as embodied in a judgment, including the rate of interest after judgment, are not changed by a subsequent change in the law.

Appellees argue that *Patton* is inconsistent with the subsequent opinion of the supreme court in *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11, 12 (1897). In that case the supreme court held that prejudgment interest allowed as damages on the principal amount recovered should accrue at the old rate until the effective date of the statute changing the rate and then at the new rate. That decision, in our opinion, is distinguish-

able because the change in the law was made before judgment, and, consequently, the case was not within the principle on which *Patton* rests, that the rate of interest, like other rights of the parties, is finally settled by the judgment.

Moreover, *Watkins* does not detract from the authority of *Patton* because it is not based on the same statute that was before the court in *Patton.* The *Watkins* opinion does not cite the particular statute referred to, but it cites two earlier cases holding that prejudgment interest allowed as damages is determined by analogy to the statute fixing the "legal" rate of interest on sums payable on contracts when no rate of interest is agreed on. These cases are *Heidenheimer v. Ellis,* 67 Tex. 426, 3 S.W. 666, 667 (1887), and *Close v. Fields,* 13 Tex. 623, 625 (1855). This statute, as well as the statute construed in *Patton,* was amended by the act of 1892 to change the rate from eight to six percent. Tex. Laws 1892, ch. 6, at 4; 10 H. Gammel, Laws of Texas, 368 (1898).

Appellees rely also on *Southwestern Bell Tel. Co. v. Hertz Equipment Rental Co.,* 533 S.W.2d 853 (Tex. Civ. App., Fort Worth 1976, writ ref'd n.r.e.), and *Donahue v. Rattikin Title Co.,* 534 S.W.2d 156 (Tex. Civ. App., Fort Worth 1976, no writ). In each of those cases the trial court had denied recovery before September 1, 1975, and the appellate court, in reversing and rendering judgment for plaintiff after that date, provided for interest at six percent before September 1, 1975, and nine percent thereafter. Appellees argue that since the appellate court was bound to render the judgment which the trial court should have rendered under rule 434, Texas Rules of Civil Procedure, the court had to determine the same question as that now before us. We do not regard those cases as authoritative because, apart from the question of whether the change in the statutory rate would apply to a subsequent judgment rendered on appeal, neither of those opinions indicates that the rate of interest was a contested matter in the appellate court, and neither shows that the *Patton* decision was called to the court's attention.

The order denying the temporary injunction is reversed, and we issue our temporary injunction restraining the sheriff and the other appellees from levying execution for an amount in excess of six percent per annum until final judgment on the merits.

AKIN, Justice, dissenting.

I cannot agree with the majority's holding that the judgment continues to bear interest at the rate prescribed by the statute in effect on the date of judgment. The majority rests its holding on the case of *Missouri Pac. Ry. v. Patton,* 35 S.W. 477 (Tex. Civ. App., 1896, writ ref'd). As noted in the majority opinion, the refusal of the writ indicates approval of the result, but not necessarily the rationale. In *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11, 12 (1897), the supreme court addressed a similar question concerning prejudgment interest. In *Junker,* the court stated that interest is essentially compensation for the withholding of money which is due and since the rate of interest is a creature of statute, held that the plaintiff was entitled to the statutory interest from the time the money was due until paid. In so holding, the court applied the existing rate of eight percent up to the date when the statute changing it to six percent became effective and thereafter applied the new rate. The change in the statutory interest rate by the legislature is apparently an attempt to insure that the compensation for detention of money due approximates the cost of money in the market place. A corollary to the rationale stated in *Junker* is that the legislature intended to prevent those who owe debts from profiting by the use of dilatory tactics to avoid payment. When the applicable interest rate does not reflect the actual damages suffered due to delay in payment, the dilatory debtor can, in effect, unjustly appropriate part of the principal's earning power. Since the purpose of the statute is to compensate for the withholding of money, damages accrue with each day that it is withheld. Because damages continually accrue, it is only logical that the amount of damages be calculated based on the interest rate which the legislature deems to be just

compensation at that time; the interest rate which provided just compensation at some arbitrarily fixed date in the past is not relevant. This was the position taken by the supreme court in *Junker.* Given this rationale for the allowance of interest and the legislative decision to adjust the interest rate, the decision in *Patton* does not further the aims of the legislature. The holding in *Patton* conflicts with the rationale of *Junker,* even though it may be factually distinguishable on the basis that it pertained to postjudgment interest rather than prejudgment interest. Since the rationale stated by the supreme court in *Junker* dictates a contrary result, I cannot accept *Patton* as controlling.

Regardless of the rationale used to support the *Patton* decision, whether that stated by the court of civil appeals or another theory upon which the supreme court could reach the same result, one of two positions regarding the interest rate and date of judgment must be taken: (1) the interest rate is irrevocably fixed on the date that the judgment is signed, whether recited in the judgment or not, or (2) the interest rate is irrevocably fixed by the recital in the judgment. The first position would seem to conflict directly with the holding in *Junker* that prejudgment interest is not fixed on the day that the right of recovery comes into existence; it is the interest rate in effect at the time that the interest accrues, not that in effect at the time the right was created, that controls. Therefore, the *Patton* decision is viable, if at all, due to the recital in the judgment. If this is true, the effect would be that a recital in a judgment of an erroneous, or even illegal, interest rate would be binding unless set aside. However, the rate of interest is based upon the statute, not the recital in the judgment. In *Junker,* the supreme court held that the question of whether prejudgment interest was recoverable was a question of law to be decided by the court; if the case was one in which interest was recoverable, then the award of interest was mandatory. The trial court was not called upon to pass on the *rate* of prejudgment interest, but merely whether it was recoverable as a matter of law. The computation of the proper interest is then a mathematical exercise involving application of the statutory rate to the amount of the judgment on a per diem basis.

Similarly, the courts of civil appeals have consistently held that a judgment bears interest at the statutory rate even though the judgment is silent as to interest. *Hoffman v. Love,* 523 S.W.2d 503, 504–05 (Tex. Civ. App., Texarkana 1975, no writ); *Broadway Drug Store, Inc. v. Trowbridge,* 435 S.W.2d 268, 270 (Tex.Civ.App., Houston [14th Dist.] 1968, no writ); *Lewis v. Hill,* 429 S.W.2d 572, 575 (Tex. Civ. App., Tyler 1968, no writ); *Carter v. McHaney,* 373 S.W.2d 82, 86 (Tex. Civ. App., Corpus Christi 1963, no writ); *Ross v. McGuffin,* 2 Willson 403, 404 (Tex. Ct. App. 1884). In *International-Great Northern R.R. v. Lucas,* 123 S.W.2d 760, 765 (Tex. Civ. App., Eastland 1938, writ ref'd), *cert. den.,* 308 U.S. 573, 60 S.Ct. 89, 84 L.Ed. 481 (1939), the court stated:

> The provision for interest on the judgment added nothing, we think, to the provisions of law. R.S. 1925, Art. 5072; *Texas & St. L. Ry. Co. v. Melear,* 2 Willson Civ.Cas.Ct.App. § 457.[1] If, therefore, the interest be not collectible as against the provisions of the law, neither would it be so far as we can see, as against the provision of the judgment, and therefore such provision in any event would be harmless.

As I understand this holding, the recital of an erroneous post-judgment interest rate in a judgment would not be controlling; the judgment would bear interest at the statu-

---

1. We note that the *Lucas* court erroneously cites *Texas & St. L. Ry. v. Melear,* 2 Willson 402 (Tex. Ct. App. 1884) for this proposition. The sole holding in *Melear* was that a cause of action not asserted in the justice court cannot be asserted in the county court on appeal. However, the following case, *Ross v. McGuffin,*

2 Willson 403, 404 (Tex. Ct. App. 1884), stands for the proposition that a judgment bears interest at the legal rate even though there is no recital of interest in the judgment. This error can be traced, we believe, to 22A TEXAS DIGEST *Interest* § 22(1) (1963), which cites *Melear* for the proposition stated in *Ross.*

tory rate regardless of the rate specified in the judgment. As noted above, the decision in *Patton* requires, as its basis, a holding that the interest rate is irrevocably fixed as of the date judgment is rendered or that it is irrevocably fixed by the recital in the judgment. Since neither of these positions is consistent with subsequent decisions, I do not view *Patton* as controlling.

The view that a change in the statutory interest rate becomes effective prospectively from and after the date of the amendment, regardless of the amount of statutory interest stated in the judgment, appears to be the more enlightened view. It is grounded on the principle that judgments bear no interest unless interest is provided for by the legislature. A question similar to ours was decided by the United States Supreme Court in 1892. In applying New York law in *Morley v. Lake Shore & Mich. S. Ry.,* 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925 (1892), the Supreme Court held that post-judgment interest was statutory and therefore subject to prospective changes in rates by the legislature, stating:

> After the cause of action, whether a tort or a broken contract, not itself prescribing interest till payment, shall have been merged into a judgment, whether interest shall accrue upon the judgment is a matter not of contract between the parties, but of legislative discretion, which is free, so far as the Constitution of the United States is concerned, to provide for interest as a penalty or liquidated damages for the non-payment of the judgment, or not to do so. When such provision is made by statute, the owner of the judgment is of course entitled to the interest so prescribed until payment is received, or until the State shall, in the exercise of its discretion, declare that such interest shall be changed or cease to accrue. Should the statutory damages for non-payment of a judgment be determined by a State, either in whole or in part, the owner of a judgment will be entitled to receive and have a vested right in the damages which shall have accrued up to the date of the legislative change; but after that time his rights as to interest as damages are, as when he first obtained his judgment, just what the Legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive and the defendant's obligation is to pay, as damages, just what the State chooses to prescribe.

In *Missouri & Ark. Lumber & Mining Co. v. Greenward District,* 249 U.S. 170, 39 S.Ct. 202, 63 L.Ed. 538 (1918), a judgment debtor attempted to distinguish *Morley* on the ground that the judgment in *Morley* did not specify a definite rate, whereas the judgment in *Arkansas Lumber* did so specify. In disposing of this contention the Supreme Court stated that the "mere recital of a particular rate does not change the nature of the charge as a penalty or liquidated damages." *Id.* The Fort Worth Court of Civil Appeals adopted, without discussion, this result in two recent cases: *Southwestern Bell Tel. Co. v. Hertz Equipment Rental Co.,* 533 S.W.2d 853 (Tex. Civ. App., Fort Worth 1976, writ ref'd n.r.e.), and *Donahue v. Rattikin Title Co.,* 534 S.W.2d 156 (Tex. Civ. App., Fort Worth 1976, no writ).

In a well-reasoned opinion, the Illinois Supreme Court concluded that the rate of interest which a judgment bears should be governed by the statutory rate at the time the interest accrues, not the rate in effect when the judgment is rendered. *Noe v. City of Chicago,* 56 Ill.2d 346, 307 N.E.2d 376 (1974). *See generally* Annot., 4 A.L. R.2d 932, § 10 (1949 and Supp. 1971). The Illinois court rejected the argument that this amounts to a retroactive application of the statutory amendment, saying that it would only be beyond the legislature's power to interfere with interest which had already accrued and vested. *Noe* at 379, 307 N.E.2d 376. In its decision the court cited a prior Illinois case holding that prejudgment interest would not be controlled by the rate in existence at the time the right to recovery matured, but would be governed by the statutory rate at the time the interest accrued; this is the position taken by our supreme court in *Junker.* The Illinois court concluded that the rationale of its earlier

prejudgment interest case applied "with equal force and validity to the question of interest on a judgment." *Id.* I agree and, consequently, dissent on the basis that we should follow the rationale of *Junker.*