The **FIRST CITY NATIONAL BANK OF PARIS, Appellant,**

v.

**R. J. HAYNES et al, Appellees.**

No. 8907.

Court of Civil Appeals of Texas, Texarkana.

March 24, 1981.

Rehearing Denied April 28, 1981.

William J. Lipscomb, Paris, for appellant.

Bobby D. Dyess, Elliott, Churchill, Hansen, Dyess & Maxfield, Dallas, for appellees.

BLEIL, Justice.

R. J. Haynes, et al, appellees, sued The First City National Bank of Paris, appellant, for damages resulting from the Bank's mismanagement of properties which it held in trust for the appellees. Based on the jury verdict, the trial court gave judgment against the Bank for damages, punitive damages, prejudgment interest and attorneys' fees. The First City National Bank of Paris has perfected an appeal from that judgment.

The questions presented concern the appropriateness of the court's charge, evidentiary points with respect to jury findings concerning the Bank's conduct, damages and punitive damages, and the allowance of prejudgment interest.

Prior to his death in 1972, Mr. J. E. Crowley made testamentary provisions creating two separate trusts and in his will named The First City National Bank of Paris as Trustee. One of these trusts was for the benefit of Mr. and Mrs. R. J. Haynes, friends of Mr. Crowley. The other trust was for the benefit of a Norma Renfro Kilgore, who had been taken in by Mr. Crowley as an orphan and reared as if she were his child. The trust assets were certain real properties located in the City of Paris, Texas. The two major commercial properties were on adjacent corners of an intersection in the City. These buildings were referred to as the Taco Hut building and the Social Security/Commercial Credit building. Next door to the Social Security building was a duplex and behind that duplex was a garage apartment. Together these properties constituted the trust estate to be administered by the Bank. At the time of Crowley's death, the estate owed the defendant Bank approximately $90,-

000.00 on a note secured by the trust property. Payments on the note were about $800.00 per month and the note was current at Crowley's death. At that time the commercial buildings were leased and bringing in a gross income of almost $2,000.00 monthly. After the appellant Bank began to manage these properties as trustee, buildings were allowed to remain vacant for periods of time, rentals were not regularly collected, the Taco Hut building's interior was damaged when a new roof was not placed on that building, third parties were allowed to remove fixtures without supervision inside that building, and the real estate taxes on the trust properties were not timely paid for periods of up to three years. The garage apartment was rented at below its fair rental to the trust officer's son. Ultimately, the trust officer and bank president were fired.

The income produced from rentals diminished from the time the appellant took over as trustee. As a result of this the Bank's promissory note could not be kept current and its arrearage went up to about $6,000.00. The inability of the Bank, as trustee, to make payments of taxes or payments on the note brought about the trustee's borrowing of funds from the Bank simply to keep these payments current. Under the management of the trustee the trust properties did not create any net income and the beneficiaries were not paid a distribution from the trust until the middle of 1976 at which time the Social Security/Commercial Credit building was sold. Although this property was carried on the estate and bank trust records at a value of $125,000.00, the purchaser paid only $20,000.00 cash and agreed to assume payment of the promissory note then in the amount of $87,883.00. After this sale, the Bank made its first distribution to the beneficiaries. The Bank proposed to distribute $4,000.00 to the Haynes and to Norma Kilgore, but at the instance of the Haynes' son, the trustee agreed to pay $8,000.00 to each beneficiary or $16,000.00 of the $20,000.00 cash realized from the sale.

Shortly after this sale the Taco Hut building became vacant. The tenants left owing $3,100.00 in back rent and a creditor of the tenant was allowed to enter the empty building and remove fixtures without any supervision. This building remained in a rough condition until it was sold in March of 1978. It had been appraised by the Bank's appraiser at $120,000.00 in 1969, and was carried on the trust records at a value of $75,000.00. The sales price was $65,000.00.

The trial court submitted four special issues regarding liability of the trustee and damages. In Special Issue No. 1 the jury was asked to find whether the Bank breached its fiduciary duty by its conduct in 18 different instances. The jury found that the Bank did breach its fiduciary duty in nine separate ways by:

1. Allowing third persons to remove fixtures and furnishings from the Taco Hut property at 1170 Clarksville Street without proper supervision;

2. Carpeting and renting the garage apartment at 1220 Clarksville Street to the son of Lloyd Ribble, the trust officer;

3. Failing to timely pay city, county, and school taxes on the Crowley trusts real estate for the years 1972, 1973 and 1974;

4. Loaning $11,000.00 to the Crowley trust at 10%;

5. Failing to employ competent persons to manage the Crowley trusts;

6. Failing to properly repair and clean the Taco Hut property at 1170 Clarksville Street so that it could be sold or leased at its fair market value;

7. Selling the real estate located at 1220 Clarksville Street in order to pay off the Bank's promissory note in the amount of $87,883.00;

8. Failing to secure a reasonable return or net income to the Crowley trusts; and,

9. Failing and refusing to keep the beneficiaries informed of the true condition of the trusts.

In Special Issue No. 2 the jury fixed damages to compensate the beneficiaries in the amount of $70,282.98.

In Special Issue No. 3 the court told the jury that if it had found in Special Issue No. 1 that the Bank had breached a fiduciary duty in any particular that they should answer whether the breach of duty also constituted, ". . . a wanton or heedless disregard or indifference by the defendant Bank to the rights of the plaintiffs." The jury answered that acts or omissions 3, 6, 7 and 9 constituted a wanton or heedless disregard. Based upon those four affirmative findings, the jury fixed punitive or exemplary damages in the amount of $140,565.96. The court's judgment awarded actual damages, punitive damages, and attorneys' fees in the amount of $13,380.00.

We are presented with four principal issues. These issues pertain to (1) the court's general submission of the damage issue; (2) evidentiary support for damages; (3) evidentiary support for punitive damages; and (4) the propriety of the court's award of prejudgment interest.

## GENERAL SUBMISSION

The First City National Bank of Paris complains of the manner of submission of the case. Its complaint is that while Special Issue No. 1a through 1s submitted, in checklist fashion, inquiries to determine whether there were any breaches of fiduciary duty, a general charge on damages was submitted by Special Issue No. 2. Upon the trial of this case, Special Issue No. 1 was objected to on these grounds, however, any complaint of the manner of submission of Special Issue No. 2 was waived because no objection was made to that issue prior to its submission as required by Tex.R.Civ.P. 274. While the trial court in its discretion might have chosen to submit separate damage issues, this was not required. A separate inquiry in checklist fashion as to specific acts of negligence, or breaches of duty, coupled with a single damage issue, in the manner submitted in this case, is perfectly proper. Tex.R.Civ.P. 277; *Scott v. Atchison, T. & S. F. R. Co.*, 572 S.W.2d 273

(Tex.1978); *Mobile Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974).

## DAMAGES

In its response to Special Issue No. 1 the jury found that the trustee Bank was negligent, that it breached its fiduciary duty, in nine separate findings as set out above. Appellant Bank raises no objection as to five of those findings, but does complain that the remaining four findings are supported by no evidence, insufficient evidence, and were against the great weight and preponderance of the credible testimony. A review of the evidence leads us to the conclusion that these points are without merit. With regard to each of these findings, there is evidence which is sufficient to support each one and none of these is against the greater weight of the evidence.

## EXEMPLARY DAMAGES

It is urged by the appellant Bank that there is no evidence or insufficient evidence to support the award of exemplary damages in this case. We have already concluded that sufficient evidence supports the jury findings that the Bank, as trustee, breached its duty or was negligent in failing to timely pay property taxes for certain years, failing to properly repair and clean the Taco Hut property prior to sale, selling certain real property in order to pay off the Bank's promissory note, and failing to keep the beneficiaries informed of the true condition of the trust. The jury also found that these same acts constituted a wanton or heedless disregard or indifference by the Bank to the rights of the beneficiaries.

It is the effect of the evidence of record over which the parties argue on this appeal. The appellant contends that it was placed in an impossible situation since the trust property, from the start, did not produce enough income to timely make the payments which fell due. On the other hand, the appellees say that the Bank demonstrated gross negligence and incompetence in its management of the trust properties. The city, county and school taxes on the property were not timely paid for 1972, 1973 and

1974. From the record it appears that during these years, the trustee did not have liquid funds available to pay these taxes nor the monthly payments due to the Bank on its note. Prior to the sale of the Taco Hut property the Bank did not repair and improve the property in order to obtain a higher price because the trust officer believed that commercial buyers were accustomed to seeing property in this condition and in any event would need to make renovations. The Bank readily concedes that it was concerned about the large promissory note owing to it in the amount of $87,-883.00. It urges that even when the 1220 Clarksville Street property was sold that note was not paid off, but was assumed by the new buyer. So far as keeping the beneficiaries informed, the trustee furnished one of the beneficiaries with a copy of the annual account prepared for other purposes. It is apparent that based upon the evidence in this case the jury concluded that the Bank incompetently managed the beneficiaries' estate.

In our review of the evidentiary points raised relating to exemplary damages, we need to bear in mind the type of evidence required. A review of Texas cases which address the question of evidence sufficient to trigger exemplary damages shows that these damages are allowed in certain cases to punish the offender and to serve as an example to others that such conduct will not be tolerated. In the Restatement (Second) of Torts § 908 (1979), it is pointed out that ordinarily for an award of punitive damages there must be proof that either, (1) a defendant's conduct was willful, malicious and wanton, or (2) a defendant's gross negligence was coupled with a culpable state of mind. Whether proof concerns a willful and malicious type conduct or a gross negligence and a culpable state of mind seems to make little difference in the cases which have dealt with exemplary damages. In either case, there is a mental factor on the part of a defendant which must exist.

■ The "state of mind" required to give rise to punitive damages is one of "...

ill-will, spite, evil motive, or purposing the injuring of another...." *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969). Where gross negligence is the ground for exemplary damages, ordinarily the conduct must be that which approximates a fixed purpose to bring about the injury of which complaint is made. *Missouri Pacific Railway Co. v. Shuford*, 72 Tex. 165, 10 S.W. 408 (1888). The "mental factor" required in gross negligence cases is described by terms such as "malice", "fraud", "oppression", "recklessness", and the like. By whatever name this mental factor is described, the purpose or intention of the defendant is determinative of his liability for exemplary damages. *Sheffield Division, Armco Steel Corporation v. Jones*, 376 S.W.2d 825 (Tex.1964). The early case of *Southern Cotton Press and Manufacturing Co. v. Bradley*, 52 Tex. 587 (1880) announced that in order for gross negligence to give rise to exemplary damages the conduct must be "morally criminal" or "quasi-criminal". Furthermore, a mere unlawful act has been held insufficient to give rise to imposition of exemplary damages. *Ogle v. Craig*, 464 S.W.2d 95 (Tex.1971).

■ This case appears to have been properly submitted to the jury on the theory of gross negligence as grounds for exemplary damages. We agree with the appellant Bank, however, that the evidence is insufficient to support the findings of the jury to that effect. The activities of The First City National Bank of Paris in the administration of the trust were certainly intentional in the sense that its conduct resulted from management or business decisions. The evidence clearly supports findings that the appellant Bank was negligent and indeed it may have been incompetent in the manner of its management of the trust properties, as argued by the beneficiaries. Our review of the evidence in this cause leads us to conclude that it is wholly insufficient to support the award of exemplary damages and appellant's points of error in these regards are sustained.

**610**

### PREJUDGMENT INTEREST

The recognized test for determining whether prejudgment interest may be awarded has been whether or not the measure of recovery, not the measure of damages, is fixed by conditions existing at the time of injury. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex. 1976); *Davidson v. Clearman*, 391 S.W.2d 48 (Tex.1965); *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897). Recently this test has evolved so as to allow recovery for prejudgment interest where a specific sum of money is determined to have been due and payable at a date certain prior to judgment. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978); *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). Here the Paris Bank argues that there were several acts on its part which gave rise to injuries so that there is no ascertainable specific date of injury. The trial court found as a date certain prior to judgment the date of the filing of this suit. As of that date all the separate breaches of duty which gave rise to damages had occurred and suit had been filed. The effect of this is simply that there may have been some interest to which the appellees were entitled but could not recover. Clearly by the selection of the date of filing of the suit as a certain date on which all damages had occurred, the trial court did not allow excessive interest.

The 10% rate of prejudgment interest that was allowed merits our consideration. If a court grants prejudgment interest pursuant to the statute fixing it on a written contract or open account, then Tex. Rev.Civ.Stat.Ann. art. 5069–1.03 (1971) applies and fixes 6% as the proper rate. In cases such as this one, when the court makes an award of equitable prejudgment interest, the rate is not clear. No statute governs and our courts have not been uniform in the rates allowed. Section 1.03 has been held to make 6% the legal rate of interest applicable to all prejudgment interest. Other courts have allowed 9% as proper on the basis that post-judgment interest is fixed at that rate. In *Maxey v. Texas Commerce Bank of Lubbock*, 580 S.W.2d 340 (Tex.1979), the court pointedly declined to express any opinion on the correctness of the Court of Civil Appeals' holding that prejudgment interest was limited to a 6% rate. In this case, prejudgment interest was awarded at 10% on an equitable theory rather than under Article 5069–1.03. In prejudgment interest cases the trend is to hold its award to be a matter within the sound discretion of the trial judge. *Phillips Petroleum Co. v. Stahl Petroleum Company*, supra; *Larcon Petroleum, Inc. v. Autotronic Systems*, 576 S.W.2d 873 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *Dallas-Fort Worth, Etc. v. Combustion Equipment Associates*, 623 F.2d 1032 (5th Cir. 1980). This being so, we see no reason why the interest rate selected should not be a discretionary matter. The rate selected in this case is a lawful rate and we find no abuse of discretion in the rate selection. The trial court did not err in its award of prejudgment interest.

The judgment of the trial court insofar as it awards $140,565.96 exemplary damages is reversed and judgment here rendered that the beneficiaries take nothing as to this; in all other respects the judgment of the trial court is affirmed.