**Charles O. GRIFFITH, North Texas Financial Group, Inc., and Essex Consolidated, Inc., Appellants,**

v.

**GEFFEN & JACOBSEN, P.C., Appellee.**

**No. 05-84-01031-CV.**

Court of Appeals of Texas, Dallas.

June 6, 1985.

Michael E. Robinson, Dallas, for appellants.

Wm. Andress, Jr., Dallas, for appellee.

Before CARVER, VANCE and MALONEY, JJ.

CARVER, Justice.

Geffen & Jacobsen, P.C. ("Geffen"), plaintiff below, was granted an interlocutory summary judgment against Charles O. Griffith, North Texas Financial Group, Inc., and Essex Consolidated, Inc. ("Griffith") in its suit on a stated account for legal fees. The trial court ordered that a jury determine the amount of prejudgment interest and attorneys' fees, and final judgment was entered after a jury awarded Geffen's counsel $30,000, and after Geffen waived any claim to prejudgment interest other than at the rate of 6% as provided for in TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp.1985).

Griffith brings four points of error, alleging that (1) the trial court erred in failing to find as a matter of law a "charge" of usurious interest under article 5069–1.03; (2) the trial court erred in granting a final summary judgment without dis-

posing of Griffith's counterclaim; (3) the summary judgment was error because the affidavits submitted by Griffith in opposition to Geffen's motion demonstrated the existence of contested issues of material fact; and (4) the trial court abused its discretion during the jury trial by overruling Griffith's objections to irrelevant and immaterial evidence which was highly prejudicial to Griffith's defenses, and by failing to grant a new trial upon Griffith's motion. We overrule each point of error and affirm the trial court's judgment.

Geffen's cause of action was based upon a written agreement between the parties dated August 11, 1981. The agreement, which was signed by both parties, provided that Griffith owed Geffen a "present balance due" of $73,195.63 for legal services rendered prior to August 11 as itemized. The agreement set forth a repayment schedule in which the last payment was to be made on October 5, 1981. In April of 1982, Geffen sued for a reduced balance of $63,515.61, stating that some payments had been made under the agreement, but that no payments had been made since October 21, 981. Geffen pleaded for the balance owing, interest at 6% per annum from October 21, 1981, and attorneys' fees.

In his first point of error, Griffith argues that Geffen's pleading constituted a "charge" of usurious interest under TEX. REV.CIV.STAT.ANN. art. 5069-1.03 (Vernon Supp.1985), which provides:

*Legal rate applicable.*

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Griffith argues that Geffen's original petition alleged that the debt was "due and payable" on either October 5 or October 21, 1981; that the petition "charges" prejudgment interest from October 21, 1981; and that therefore, the statutory 30-day period had not elapsed between the date due and

the date from which interest was charged. Griffith concludes that since the allowable rate was zero until November 4, 1981, at the earliest, Geffen charged twice the allowable rate and is therefore subject to the penalty provisions of TEX.REV.CIV.STAT. ANN. art. 5069–1.06(2) (Vernon 1971), under the authority of *Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217 (Tex. 1979). We reject Griffith's arguments.

First, we note that the account sued upon is an "account stated" as defined in *Eastern Development & Investment Corp. v. City of San Antonio*, 557 S.W.2d 823, 824–25 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.):

An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance. [Citations omitted].

The rule for allowing interest on delinquent stated accounts was set forth by the Texas Supreme Court in *Heidenheimer v. Ellis*, 67 Tex. 426, 3 S.W. 666 (1887). In *Heidenheimer*, the parties had signed a written agreement showing that appellant owed appellees a particular sum of money for goods that had been sold and delivered. 3 S.W. at 667. The court found that this "stated account" did not fit into either category of the predecessor statute to article 5069–1.03: it was neither an "open account" nor a "written contract ascertaining the sum payable." Therefore, the statutory time periods did not apply, and it was proper to allow interest on a stated account "from the date of acknowledgment and promise to pay the same." 3 S.W.2d at 666. The court allowed the interest as damages because of the "manifest delinquency on part of the debtors, working a gross injustice to the creditors, and resulting in *a wrong which cannot be compensated by any sum less than* the principal *and the interest* on the debt *from the time at which it ought to have been paid.*" 3

S.W. at 667 (emphasis added). *See also Sammons Enterprises, Inc. v. Manley,* 554 S.W.2d 205, 208 (Tex.Civ.App.—Dallas 1977), *aff'd* 563 S.W.2d 919 (Tex.1978) (explains that under *Heidenheimer,* prejudgment interest allowed as damages is determined by analogy to article 5069–1.03).

 Under *Heidenheimer,* then, interest would be allowed on the stated account here from August 11, 1981, the date that the account was acknowledged. An agreement to repay the amount due by installments does not postpone the date from which interest is due. *See Minkert v. Minkert,* 263 S.W. 648, 650 (Tex.Civ.App.—Texarkana 1924, no writ) (where parties to note agree to extension of time for repayment, the note bears interest from original date unless otherwise specifically provided). Geffen pled for interest from October 21, 1981. We hold that Geffen's pleadings did not constitute a "charge" of usurious interest. The first point of error is overruled. *See also First City National Bank of Paris v. Haynes,* 614 S.W.2d 605, 610 (Tex.Civ. App.—Texarkana 1981, no writ) (trial court's award of prejudgment interest at rate of 10% on an equitable theory rather than under article 5069–1.03 upheld as within trial court's discretion).

 Griffith next argues that the trial court erred in granting a final summary judgment without disposing of his counterclaim for usury. The final judgment recited that an interlocutory summary judgment had provided for prejudgment interest from October 21, 1981, at a fair and reasonable rate to be determined at trial on the merits; and that the plaintiff in open court had waived any claim of prejudgment interest other than at the rate of 6% per annum as provided by article 5069–1.03. By awarding this prejudgment interest, the trial court necessarily had decided the issue of usury. Griffith's affidavits and pleadings requesting a finding of usury were before the trial court, and the trial judge denied all relief sought that was not specifically granted in the judgment.

The only case cited by Griffith, *Hodde v. Young,* 672 S.W.2d 45 (Tex.App.—Houston [14th Dist.] 1984), *writ ref'd n.r.e. per curiam,* 682 S.W.2d 236 (Tex.1984), is distinguishable. In *Hodde,* plaintiff Young sued under the Deceptive Trade Practices Act for breach of express and implied warranties on a motorcycle purchased from defendant Hodde. Hodde answered, and Young moved for summary judgment. Hodde answered the summary judgment motion and also filed a counterclaim against Young for the cost of repairs to the motorcycle. Hodde then moved for summary judgment on the counterclaim. Young answered the counterclaim and motion, but did not amend his own motion for summary judgment to seek affirmative relief on Hodde's counterclaim. The trial court granted Young's motion for summary judgment and rendered a final judgment expressly denying all other relief sought in the case. The court of appeals reversed, holding that the trial court erred in rendering a take-nothing judgment against Hodde's counterclaim in the absence of a motion for summary judgment by Young seeking that relief.

In *Hodde,* then, the court held that a partial summary judgment should have been granted instead of a final summary judgment, because the judgment rendered did not dispose of all parties and issues. Here, however, the final summary judgment did dispose of all parties and issues as required by *Teer v. Duddlesten,* 664 S.W.2d 702, 703 (Tex.1984). In *Hodde,* the trial court could decide the validity of the deceptive trade practices claim without disposing of the counterclaim for the cost of repairs. In contrast, the trial judge here could not decide that any interest was due unless he had also decided that the interest charged was not usurious. Final summary judgment, therefore, was properly granted here. Griffith's second point of error is overruled.

In this third point of error, Griffith complains that the trial court erred in rendering summary judgment in favor of Geffen because Griffith's affidavits demonstrated the existence of genuine issues of material fact regarding duress, the validity of the

account, the identity of the entities who owe the debt, and the failure of consideration for the execution of the agreement by Griffith.

In his affidavit, Griffith alleges that Geffen threatened to take action against him if he did not sign the agreement. Griffith states that Geffen threatened to: (1) attach funds from Griffith's real estate closings; (2) attach oil revenues resulting from an oil syndication that Geffen was working on for Griffith; (3) attach any interests or assets of Griffith's companies of which Geffen had knowledge from the legal work he had performed; (4) make Griffith's files and records unavailable; and (5) disclose confidential information. For the purposes of this appeal, we must accept these statements as true. *Crawford v. Hanover Insurance Co.*, 582 S.W.2d 240, 241 (Tex.Civ. App.—Waco 1979, no writ). We must determine whether the trial judge was correct in finding that these statements did not constitute duress as a matter of law.

 This Court has held that there are at least three elements of duress:

> While the authorities cited ... demonstrate a lack of unanimity on the question, our courts of Texas have consistently followed the rule, as a matter of law, that (1) there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do; (2) there must be some illegal exaction or some fraud or deception; (3) the restraint must be imminent and such as to destroy free agency without present means of protection.

*Tower Contract Co., Inc. v. Burden Brothers, Inc.*, 482 S.W.2d 330, 335 (Tex. Civ.App.—Dallas 1972, writ ref'd n.r.e.). We hold that Geffen's acts do not constitute duress under this definition. Griffith first alleged that Geffen threatened to attach funds from certain transactions of Griffith's companies. Geffen had a legal right to bring suit for attachment under TEX.REV.CIV.STAT.ANN. arts. 275–302 (Vernon 1973) and TEX.R.CIV.P. 592–609. Whether or not the suit is meritorious is a question for the court before which the suit

is brought; Geffen nonetheless had access to the courts to bring the suit against Griffith.

 Griffith also alleges that Geffen threatened to make Griffith's files and records unavailable and to disclose confidential information. An attorney may withhold a client's papers if he is claiming a lien against the papers for amounts due from the client for professional services or expenses. *Nolan v. Foreman*, 665 F.2d 738, 743 (5th Cir.1982); *see* SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. XII, § 8 (Code of Professional Responsibility) DR 9–102 (1973) [hereinafter cited as TEXAS CODE OF PROFESSIONAL RESPONSIBILITY]. In addition, under TEXAS CODE OF PROFESSIONAL RESPONSIBILITY, DR 4–101(C)(4), a lawyer may reveal "confidences or secrets necessary to establish or collect his fees or to defend himself or his employees or associates against an accusation of wrongful conduct."

 We conclude, therefore, that Geffen did not threaten to do any act which he had no legal right to do, so that the trial court could have found that an essential element of duress was absent as a matter of law. Moreover, in *First Texas Savings Association of Dallas v. Dicker Center, Inc.*, 631 S.W.2d 179 (Tex.Civ.App.—Tyler 1982, no writ), the court discussed an additional element of duress. The court stated:

> There is no contention that First Texas was responsible for Edward Dicker's financial situation or condition.... It seems to be a settled principle of law that economic duress may be claimed *only when the party against whom it is claimed was responsible for claimant's financial distress.*

631 S.W.2d at 185–86 (emphasis added). Similarly, Griffith makes no claim that Geffen was responsible for Griffith's financial situation; he states only that there were "severe cash flow problems being experienced at that time." As stated in *First Texas*, "[s]tress of business conditions will not constitute duress unless the defendant

was responsible for that condition." 631 S.W.2d at 186. Under this additional requirement, then the trial court could have found that there was no duress as a matter of law.

 Griffith also asserts that genuine issues of material fact exist regarding the identity of the entities who owe the debt and the failure of consideration for the execution of the agreement. Failure of consideration was not alleged in a verified pleading as required by TEX.R.CIV.P. 93(9), and therefore is waived as a defense. *Widmer v. Stamps,* 663 S.W.2d 875, 881 (Tex.App.—Houston [14th Dist.] 1983, no writ). As to the identity of the debtors, Griffith signed the account for North Texas Financial Group, Inc., Essex Consolidated, Inc., and "all of its Subsidiary, Related and Affiliated Companies." Geffen, as movant, offered proof through the agreement which establishes as a matter of law that Griffith signed the agreement on behalf of all of his subsidiary, related, and affiliated companies.[1] Once the movant has established as a matter of law that there is no genuine issue of material fact as to any of the essential elements of his cause of action, "the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or justify his inability to do so, or the summary judgment will be granted." *Fail v. Lee,* 535 S.W.2d 203, 207 (Tex.Civ.App.—Fort Worth 1976, no writ). Griffith's assertion in his affidavit that the legal fees outlined in the letter agreement were "not necessarily" rendered to North Texas, Essex, or himself, but to other entities in which he was involved, even when taken as true, does not raise a material fact issue as to an essential element of Geffen's cause of action. Griffith signed on behalf of all of the entities, so that it is no defense to the agreement to argue that one entity rather than another owes the amount due. Griffith's third point of error is overruled.

In his final point of error, Griffith asserts that the trial court erred in overruling his objections to irrelevant, immaterial, and highly prejudicial evidence and by failing to grant a new trial. Griffith merely lists page numbers from the statement of facts where his objections may be found; he neither describes the "prejudicial, irrelevant, and immaterial evidence" nor cites any authority in support of his argument. His complaint is therefore waived. *Hatch v. Davis,* 621 S.W.2d 443, 447 (Tex.Civ.App. —Corpus Christi 1981, writ ref'd n.r.e.). Moreover, we have reviewed the record and found no reversible error. Griffith's fourth point of error is overruled.

Affirmed.

---

**1.** We may also assume that the affidavits filed by Geffen in support of its motion for summary judgment, referred to in Griffith's affidavit but omitted from our record, also establish the correctness of the judgment. *DeBell v. Texas General Realty, Inc.,* 609 S.W.2d 892, 893 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ).